1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11

12

| | |
|---|---|
| JIGAR BABARIA, et al., | Case No. 22-cv-05521-SI |
| Plaintiffs, | |
| | **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| ANTONY J. BLINKEN, et al., | Re: Dkt. No. 9 |
| Defendants. | |

13

14

15     Before the court is plaintiffs' motion for a preliminary injunction.[1]  Dkt. No. 9.  Defendants

16   oppose.  Dkt. No. 14.  A hearing on the motion was held on October 11, 2022.  Dkt. No. 17.  For

17   the reasons set forth below, the Court **DENIES** the motion.

18

19                                          **BACKGROUND**

20        At issue in this case is the process by which defendant United States Citizenship and

21   Immigration Services (USCIS) and the United States Department of State (DOS) allocate immigrant

22   visas, which allow the holder to live permanently in the United States.  Dkt. No. 14 at 12.  Plaintiffs

23   are Indian citizens who currently reside in the United States in non-immigrant status and who have

24   submitted Forms I-485 for EB-2 immigrant visas.  Dkt. No. 1 ¶¶ 1–92, 130–134.  Each plaintiff had

25   a visa number available at the time of application but no longer had a visa number available at the

26

27

28

---

[1] Plaintiffs initially filed a motion for a temporary restraining order and sought a hearing on September 30.  Dkt. No. 9.  This Court set the hearing for October 11 and requested briefing from defendants.  Dkt. No. 12.  At the October 11 hearing, the parties requested that the motion be treated as one for preliminary injunction.  *See* Dkt. No. 17.

United States District Court
Northern District of California

time of adjudication.  Dkt. No. 9 at 7–9.  Plaintiffs allege that defendants' policy of requiring a visa number be available at the time of adjudication as well as at the time of application is contrary to Congress' intent and violates the APA.  Dkt. No. 1 ¶¶ 160–175.  They seek a preliminary injunction ordering "that Defendants are restrained deploying their Retrogression Policies, and Defendants should continue to adjudicate Plaintiffs' applications for adjustment of status and allocating visa numbers for them as they are approved."[2]  Dkt. No. 9-3.

## I.    Adjustment of Status and Visa Retrogression

Issuance of immigrant visas is governed by the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101–1537.  The INA provides for "adjustment of status," a mechanism by which USCIS can "adjust" the status of a noncitizen already living in the USA to that of a lawful permanent resident.  Dkt. No. 9 at 4.  The INA limits the number of immigrant visas available each fiscal year in various categories.  8 U.S.C. §§ 1151–52.  Visas are separated into three broad categories:  family-based, employment-based, and diversity.  8 U.S.C. § 1151(a).  Section 1152 of the INA further restricts family-sponsored and employment-based visas made available to nationals of any one foreign state to seven percent "of the total number of such visas made available under such subsections in that fiscal year."  8 U.S.C. § 1152(a)(2).  Within the employment-based category, visa allotments are further broken down into preference categories.  8 U.S.C. § 1153(b).  The visas sought in this case are EB-2 visas, or employment-based visas issued to noncitizens "who are members of the professions holding advanced degrees or aliens of exceptional ability."  *Id.*; Dkt. No. 1 ¶ 133.  Each plaintiff in this case seeks an EB-2 visa chargeable to India.  Dkt. No. 1 ¶ 130.

Noncitizens seeking employment-based immigrant visas follow three steps:

> First, the Department of Labor (DOL) must issue an alien labor certification to the immigrant's employer. (This certification states that the labor market can absorb the immigrant without affecting other workers' wages. *See* 8 U.S.C. § 1182(a)(5)(A)(i).) Second, USCIS must approve the employer's immigrant visa petition (Form I–140). *See* 8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5(a). Third, the immigrant must

---

[2] Plaintiffs originally sought this relief "for the next 10 days or until this Court can hold a preliminary injunction hearing."  Dkt. No. 9-3.  Because the parties have agreed to treat this motion as one for a preliminary injunction rather than a temporary restraining order, the Court interprets the plaintiffs' request as one for indefinite relief.

obtain approval of her own I–485 application for adjustment of status. 8 U.S.C. § 1255(a); 8 C.F.R. § 204.5(n)(1).

*Mantena v. Johnson*, 809 F.3d 721, 725 (2d Cir. 2015). USCIS will only adjust status if the applicant has properly filed an I-485 application, a visa number was immediately available at the time of filing, and a visa number is immediately available at the time of adjudication. Dkt. No. 14 at 16. The "priority date" for determining eligibility is the filing date of either the labor certification or the I-140. *Id.* at 16–17.

DOS is responsible for allocating immigrant visas within the limits set by Congress. 22 C.F.R. § 42.51. Congress has provided for DOS to "make reasonable estimates of the anticipated number of visas to be issued during any quarter of any fiscal year . . . and to rely upon such estimates in authorizing the issuances of visas." 8 U.S.C. § 1153(g). When demand for immigrant visas in a particular category (in this case, EB-2 visas for Indian nationals) exceeds the number of visas available, DOS considers the category oversubscribed and imposes a "final action date." Dkt. No. 14 at 19. Only applicants with priority dates before the final action date are considered to have visa numbers available and can apply and be approved for visas. *See id.* DOS publishes the cut-off dates in its monthly visa bulletin. *Id.* The final action date will move forward as more visas available; however, if demand rises above the number of visas available the dates may move *backwards*. *Id.* This backwards movement is known as retrogression. *Id.*

When a particular category retrogresses, an applicant whose priority date was previously before the cut-off may find that her priority date is now *after* the cut-off. *See id.* Even if that applicant filed her I-485 while a visa was available, USCIS will not approve the adjustment until the cut-off date once again progresses beyond the applicant's priority date. *Id.* Until that time, the application remains pending. *Id.* at 23. It can take months or years for a cut-off to fully recover after retrogression.[3] Dkt. No. 14-1 at 11–12.

---

[3] The government points out that cut-off dates move forward gradually after retrogression; thus, when a group of applicants is affected by retrogression, those with the earlier priority dates will regain eligibility sooner.

## II.     Legislative and Regulatory History

The INA grants the Attorney General[4] discretionary authority to adjust the status of eligible noncitizens as follows:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).  When the INA was first enacted in 1952, the requirements for eligibility under this section included a requirement that a visa be immediately available both at the time of filing and at the time of *adjudication* of the application.  INA, Pub. L. No. 414-163, § 245(a) (1952).  In 1960, Congress amended Section 1255(a) to delete the requirement that a visa number be available at the time of filing.  INA, Pub. L. No. 86-648, § 10 (1960).  Then in 1976, Congress reinstated the statutory requirement that a visa be available at the time of filing and removed the requirement that a visa be immediately available at the time of adjudication of the application.  INA, P.L. 94-571, § 6 (Oct. 20, 1976).  Plaintiffs assert that by removing the statutory requirement that a visa number be immediately available at the time of adjudication, Congress *prohibited* the Attorney General from imposing such a requirement.  Dkt. No. 9 at 16.

Defendants point to 8 U.S.C. § 1255(b) as evidence that Congress requires visas to be allocated at the time of approval and argue that this requirement is inconsistent with plaintiffs' argument.  Upon approval of an application for adjustment of status, the INA requires that:

> [T]he Attorney General shall record the alien's lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made, and the Secretary of State shall reduce by one the number of the preference visas authorized to be issued under sections 1152 and 1153 of this title within the class to which the alien is chargeable for the fiscal year then current.

---

[4] Although the statute refers to the Attorney General, authority has been transferred to the Secretary of Homeland Security.  *See Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1162 n.3 (N.D. Cal. 2007).  For ease of reference, this order refers to the Attorney General.

United States District Court
Northern District of California

1   8 U.S.C. § 1255(b).

2       Defendants also assert that Congress was well aware of, and did not eliminate, regulatory

3   requirements that a number be immediately available at filing.  Dkt. No. 14 13–14.  At the time of

4   the 1976 amendments to the INA, 8 C.F.R. § 245.1(g) (1965) required that an adjustment of status

5   application "shall not be approved until an immigrant visa number has been allocated by the

6   Department of State."  The modern equivalent of this regulation requires that "[a]n application for

7   adjustment of status, as a preference alien, shall not be approved until an immigrant visa number

8   has been allocated by the Department of State."  8 C.F.R. § 245.2(a)(5)(ii).

9

10  **III.    Facts and Procedural History**

11      Plaintiffs are Indian nationals currently living in the United States who have applied for

12  adjustment of status.  Dkt. No. 1 ¶¶ 1–92, 130–34.  Plaintiffs have been in the United States for

13  years; their priority dates are all between June 29, 2012 and November 17, 2014.  *Id.* ¶ 134; Dkt.

14  No. 1-1.  On August 3, 2022, DOS published the September 2022 Visa Bulletin.  DOS – Bureau of

15  Consular Affairs, Visa Bulletin, Vol. X, No. 69 (September 2022).  The final action date in the

16  September 2022 Visa Bulletin for EB-2 visas chargeable to India was December 1, 2014; each

17  plaintiff applied while her priority date was earlier than the final action date.  *Id.*; Dkt. No. 1 ¶¶ 130–

18  34.

19      On September 6, 2022, DOS issued a memorandum to USCIS that the maximum allotment

20  of visas had been reached for EB-1, EB-2, and EB-3 visas for Fiscal Year 2022.  Dkt. No. 14 at 20.

21  Effective immediately, no further visas would be issued in those categories.  *Id.*  USCIS ceased

22  approval of applications in those categories.  Dkt. No. 9 at 8.  Then on September 7, DOS issued the

23  Visa Bulletin for October 2022.  DOS – Bureau of Consular Affairs, Visa Bulletin, Vol. X, No. 70

24  (October 2022).  The final action date in plaintiffs' category had retrogressed 32 months to April 1,

25  2012.  *Id.*  Plaintiffs no longer have visa numbers available and do not know how long it will take

26  for their priority dates to become current.[5]  *See id.*; Dkt. No. 1-1.

27  ───────────────

28      [5] The Visa Bulletin for November 2022 is now available; the final action date for EB-2 visas
    chargeable to India remains April 1, 2012.  DOS – Bureau of Consular Affairs, Visa Bulletin, Vol.

United States District Court
Northern District of California

1    Plaintiffs filed a complaint and motion for a temporary restraining order on September 27,

2  2022.  Dkt. No. 1 (Complaint); Dkt. No. 9 (motion for temporary restraining order).  They argue

3  that retrogression is an *ultra vires* policy and that Congress's 1976 amendment to the INA prevents

4  USCIS from considering visa availability at the time of adjudication.  They argue that USCIS and

5  DOS have a required, discrete duty and their failure to perform that duty is a violation of the APA.

6  Dkt. No. 1 ¶¶ 160–67.

7    Plaintiffs assert retrogression "harms and renders hopeless its victims" like them.  Dkt. No.

8  1 ¶ 154.  Among the harms alleged due to the delay in processing plaintiffs' applications are delay

9  in their ability to apply for citizenship, lack of career mobility, barriers to their ability to travel, and

10 the continuation of the "anguish" they have gone through with their futures uncertain.  *Id.* ¶¶ 155–

11 59.

12    Plaintiffs seek a temporary restraining order/preliminary injunction  requiring defendants to

13 continue adjudicating plaintiffs' applications for adjustment of status and allocating visa numbers

14 for them.  Dkt. No. 9-3.  Plaintiffs allege that if such an order is not issued, they will be irreparably

15 harmed because they will be deprived of their ability to have visas adjudicated, will face

16 "indeterminate delay" in having their applications adjudicated, and because they will be denied the

17 benefits of permanent resident status.  Dkt. No. 9 at 18–19.  Further, some plaintiffs had family

18 members' visas adjudicated, but not their own, and argue that they now face family separation.  *Id.*

19 at 19.

20    The government argues that plaintiffs seek adjudication of the merits of their claims cloaked

21 as a TRO/preliminary injunction, are unlikely to succeed on the merits, and cannot show irreparable

22 harm.  Dkt. No. 14 at 10–11.  It argues that plaintiffs' case is moot because there are no visa numbers

23 available.  *Id.*  Further, the government argues that it is required to implement retrogression and

24 cannot issue visas when none are available due to statutory limits on the number of visas available

25 each fiscal year.  *Id.*  Finally, it argues that the delay in adjudication does not constitute irreparable

26 harm.  *Id.* at 11.

27

28
─────────────────────
X, No. 71 (November 2022).

United States District Court
Northern District of California

**LEGAL STANDARD**

"A preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (quoting *Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984)). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit employs a "sliding scale" version of the *Winter* standard under which courts weigh the factors "on a sliding scale, such that where there are only serious questions going to the merits – that is, less than a likelihood of success on the merits – a preliminary injunction may still issue so long as the balance of hardships tips sharply in the plaintiffs' favor and the other two factors are satisfied." *Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020) (internal quotations omitted) (quoting *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018)). The latter two factors merge when the government is a party. *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018).

Mandatory injunctions, which "order[] a responsible party to take action," are "particularly disfavored." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotations omitted). The party seeking a mandatory injunction "must establish that the law and facts clearly favor her position, not simply that she is likely to succeed." *Id.*

**DISCUSSION**

**I.      Likelihood of Success on the Merits**

     **a.  A live case or controversy exists.**

Defendants first argue that plaintiffs' complaint is moot because there are no visas remaining for the Fiscal Year 2022 and plaintiffs are not eligible for visas in the Fiscal Year 2023 due to

United States District Court
Northern District of California

retrogression. Dkt. No. 14 at 24–27. This argument is rejected. That there are no visas remaining for the Fiscal Year 2022 is irrelevant because new visas become available each fiscal year and plaintiffs' applications remain pending. *See* Dkt. No. 14 at 23. Unlike the claim in *Zixiang Li v. Kerry*, 710 F.3d 995 (9th Cir. 2013), the claim in this case is not specific to visas allocated in a particular fiscal year. Further, defendants' argument that plaintiffs cannot challenge retrogression because visa numbers are not available in the Fiscal Year 2023 due to retrogression is circular. If the Court were to find that the policy of visa retrogression were unlawful, visa retrogression would not be a bar to relief. Therefore the case is not moot.

### b. Plaintiffs have little to no likelihood of success on the merits.

Plaintiffs seek relief under section 706(1) of the Administrative Procedure Act, which enables courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706. Relief under section 706 requires a showing that an agency failed to take a discrete action that it is required to taken. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 55 (2004). Plaintiffs have not alleged a particular timeline is required for the processing of immigrant visas. *See* Dkt. Nos. 1, 9. Rather, they argue that by removing the statutory requirement that visas be available at adjudication, Congress has ordered USCIS and DOS to proceed with adjudication and issuance of visas when none are available. *See id.*

The court resorts to legislative history only where the plain language is ambiguous or "where the legislative history clearly indicates that Congress meant something other than what it said." *Carson Harbor Village, Ltd. V. Unocal Corp.*, 270 F.3d 863, 877 (9th Cir. 2001) (quoting *Perlman v. Catapult Entm't, Inc. (In re Catapult Entm't, Inc.)*, 165 F.3d 747, 753 (9th Cir.1999)). Section 1255(a) requires that an applicant's status "may" be adjusted, at the Attorney General's discretion, if certain prerequisites are met. 8 U.S.C. § 1255(a). The statute "says nothing about whether a visa must be available at the time an application is approved." *Museboyina v. Jaddou*, 2022 WL 4608264, at *4 (D. Neb. Sept. 30, 2022). There is no ambiguity in the statute requiring the Court to look further to determine whether Congress intended to prohibit the Attorney General from

considering criteria beyond those set by Congress.  Nor does the legislative history indicate that Congress meant something other than what it said.

Further, plaintiffs' argument is inconsistent with the requirements of the INA.  Congress has imposed strict limits on the number of visas issued each fiscal year.  8 U.S.C. §§ 1151–1153. Plaintiffs' interpretation of 8 U.S.C. § 1255(a) would require DOS to issue visas in excess of the number authorized by Congress if it underestimated the number of people who would apply for those visas.  Congress has also required that when an application is approved, "the Attorney General shall record the alien's lawful admission for permanent residence as of the date the order of the Attorney General approving the application for the adjustment of status is made, and the Secretary of State shall reduce by one the number of the preference visas authorized to be issued under sections 1152 and 1153 of this title within the class to which the alien is chargeable for the fiscal year then current."  8 U.S.C. § 1255(b).  Plaintiffs' interpretation would lead to a mismatch between the number of visas available and the number issued, because a visa's availability would be committed at the time of application but reduced only at the time of approval.  This is an absurd result.  *See Tovar v. Sessions*, 882 F.3d 895, 904 (9th Cir. 2018) (noting that interpretations which would produce absurd results are to be avoided).

Because plaintiffs' interpretation is not supported by the plain language of the statute and would lead to "absurd results," plaintiffs have failed to show either a likelihood of success on the merits or serious questions going to the merits.

## II.     Irreparable Harm

Mandatory injunctions are "not granted unless extreme or very serious damage will result." *Anderson v. United States,* 612 F.2d 1112, 1115 (9th Cir. 1979) (quoting *Clune v. Publishers' Assn. of New York City*, 214 F.Supp. 520 (S.D.N.Y.1963), *Aff'd per curiam*, 314 F.2d 343 (2d Cir. 1963)). A mandatory injunction is one that "orders a responsible party to 'take action.'"  *Meghrig v. KFC W., Inc.,* 516 U.S. 479, 484 (1996).  Plaintiffs argued at the hearing that the injunction they seek is not mandatory.  However, the injunction requested would require plaintiffs to take action by

United States District Court
Northern District of California

adjudicating plaintiffs' applications for adjustment of status and allocating visa numbers.  The injunction sought is therefore mandatory.

Plaintiffs have not met the burden of showing extreme harm.  Absent injunctive relief, plaintiffs "will remain eligible for adjustment of status for the pendency of their applications." *Singh v. Jaddou*, 2022 WL 4094373, at *5 (W.D. Wash. Sept. 2, 2022) (denying motion for injunctive relief to compel adjudication of immigrant visa applications before regression could take place).  While they are likely to experience harm due to delay, including bureaucratic barriers to travel and job success, they cannot show the kind of "extreme or very serious damage" necessary to justify a mandatory injunction.  *Anderson*, 612 F.2d at 1115 (9th Cir. 1979).  Further, plaintiffs cannot show that USCIS would immediately adjudicate their applications absent retrogression and the policy of requiring visas available at the time of adjudication.  *See Singh*, 2022 WL 4094373, at *5 (W.D. Wash. Sept. 2, 2022).  To the extent plaintiffs are harmed by the delay in processing their applications, it is not clear that the harm would be repaired by the injunction.

### III.    Public Interest and the Balance of Equities

The public interest and balancing of equities merge when the government is the opposing party.  *Nken v. Holder*, 556 U.S. 418, 435 (9th Cir. 2009).  The public interest factor favors the government here.  Plaintiffs' requested relief would upend the current system used for adjudicating adjustment applications and allocating visas.  It would result in the government either prioritizing plaintiffs over other immigrants or exceeding the visa limits set by Congress.  Further, it could disrupt the system for counting available visas such that visas would be wasted each year.  Issuing the requested injunction would be against the public interest.

Because all three factors favor the government, plaintiffs' request for a preliminary injunction is denied.

\\\

United States District Court
Northern District of California

10

**CONCLUSION**

Plaintiffs' motion for a preliminary injunction is **DENIED.**


**IT IS SO ORDERED**.

Dated: October 18, 2022

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California